# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUSAN J. HARLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-01725-DWD |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision by the Defendant denying Plaintiff's applications for Disability Insurance Benefits ("DIBs") and Supplemental Security Income ("SSI"). For the reasons explained below, the Court **AFFIRMS** the final agency decision of Defendant. The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff.

## Procedural History

On October 20, 2021, Plaintiff filed her application for DIBs and SSI. (Doc. 10-2, pg. 18). Plaintiff alleged a disability onset date of March 22, 2020. (Doc. 10-2, pg. 18). Plaintiff's claim was initially denied on May 11, 2022, and then again upon reconsideration on October 12, 2022. (Doc. 10-2, pg. 18). Following Plaintiff's written request, her claims were the subject of an evidentiary hearing held on July 25, 2023. (Doc. 10-2, pg. 18). In a decision dated October 24, 2023, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled, resulting in a denial of her applications. (Doc. 10-2, pgs. 18-41). On June 7,

2024, the Appeals Council denied Plaintiff's request for review. (Doc. 10-2, pgs. 2–6). Therefore, the ALJ's decision is final for purposes of the Court's review. Plaintiff exhausted her administrative remedies and timely filed a Complaint (Doc. 1).

## **Applicable Legal Standards**

To qualify for DIBs or SSI, a claimant must be disabled. A disability is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that, *inter alia*, has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing medical evidence to support the claims of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof."). While a claimant's statements of pain or other symptoms are considered, those statements alone are not conclusive evidence of a disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.

To assess an alleged disability, the ALJ employs a "five-step sequential evaluation process." *See* 20 C.F.R. §§ 404.1520 (a)(1), (2), (4); 416.920(a)(1), (4). The ALJ asks the following questions: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment that meets certain duration requirements or a combination of impairments that is severe and meets the duration requirements; (3) whether the claimant has an impairment that meets or equals one of the impairments listed in the regulations and satisfies the duration requirements; (4) whether, in view of the claimant's residual

2

functional capacity ("RFC") and past relevant work, he or she can perform past relevant work; and (5) whether, in view of the claimant's RFC, age, education, and work experience, he or she can adjust to other work. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant is doing substantial gainful activity under step 1, does not have an impairment or combination of impairments as described at step 2, can perform past relevant work under step 4, or can adjust to other work under step 5, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i),(ii), (iv), (v); 416.920(a)(4)(i), (ii), (iv), (v). If the claimant has an impairment that meets the requirements of step 3 or is incapable of adjusting to other work under step 5, then he or she is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),(v); 416.920(a)(4)(iii), (v). The claimant has the burden of proof at steps 1-4. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022).

A severe impairment under step 2 is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c); *see also Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). Impairments which are expected to result in death, or those which have lasted or are expected to last for a continuous period of at least twelve months, qualify as severe under the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1509; 416.920(a)(4)(ii); 416.909. "[T]he step two determination of severity is 'merely a threshold requirement'" to "proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010). Once an ALJ makes a finding that one or more of a claimant's ailments are severe, he must "consider the aggregate effect of

3

the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523; and then collecting cases).

Impairments and related symptoms may cause physical and mental limitations that affect what may be done in a work setting. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC at issue in step 4 assesses the most that a claimant can do in a work setting, notwithstanding those limitations. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1); *accord* SSR 96-8p, 1996 WL 374184, *2; *Clifford v. Apfel*, 227 F.3d 863, 872-73 n.7 (7th Cir. 2000). In this way, an RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, for eight hours a day and five days a week or an equivalent work schedule. *See Tenhove v. Colvin*, 97 F. Supp. 2d 557, 568 (E.D. Wisc. 2013); SSR 96-8p, 1996 WL 374184, *2; *accord Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). An RFC must be based on all of the relevant medical and other evidence contained in the record. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); SSR 96-8p, 1996 WL 374184, *2-3, 5.

When completing an RFC, the ALJ must identify the claimant's functional limitations and assess his or her work-related abilities on a function-by-function basis. *See Tenhove*, 97 F. Supp. 2d at 569; SSR 96-8p, 1996 WL 374184, *1, 3; *accord Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D. Wisc. 2004). The ALJ considers all impairments, including those that are not severe, and the claimant's ability to meet physical, mental, sensory, and other requirements of work. *See* 20 C.F.R. §§ 404.1545(a)(2), (4); 416.945(a)(2), (4); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) ("[T]he ALJ must

consider the combined effect of all impairments, 'even those that would not be considered severe in isolation.'"). "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). And, importantly, while a claimant's statements of pain or other symptoms are considered, they alone are not conclusive evidence of a disability. *See* 20 C.F.R. § 404.1529.

As to physical abilities, the ALJ assesses the nature and extent of any physical limitations, then determines the RFC for work activity on a regular and continuing basis. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b). A limited ability to perform physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching may reduce the ability to do past work. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b); *see also* SSR 96-8p, 1996 WL 374184, *5-6. Other impairments affecting work abilities include, among other things, impairments imposing environmental restrictions. *See* 20 C.F.R. §§ 404.1545(d); 416.945(d). If the symptoms, signs, or laboratory findings for a severe impairment do not meet or equal those of a listed impairment, the ALJ considers the total limiting effects of all impairments, including medical and nonmedical evidence. 20 C.F.R. §§ 404.1545(e); 416.945(e).

After the identification of the claimant's functional limitations and the assessment of his or her work abilities on a function-by-function basis, the RFC may be expressed by exertional category, including "light." *See Tenhove*, 97 F. Supp. 2d at 569; *accord Lechner*, 321 F. Supp. 2d at 1036; SSR 96-8p, 1996 WL 374184, *3. To do a full range of work in an exertional category, such as "light," the individual must be able to perform substantially

5

all of the functions required at that level. *See* SSR 96-8p, 1996 WL 374184, *5-6. Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b). Even the weight lifted in a job is very little, a job is considered light work if it requires a good deal of walking or sitting, or sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b). In the absence of additional limiting factors like "loss of fine dexterity or inability to sit for long periods of time," a person considered capable of performing light work is also considered capable of performing sedentary work. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b).

## **The ALJ's Decision**

The ALJ assessed Plaintiff's alleged disability under the five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520 (a)(1), (2), (4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, March 22, 2020. (Doc. 10-2, pg. 21). Under step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, stenosis, radiculopathy, hand and wrist osteoarthritis, osteopenia, right wrist ganglion cyst, adjustment disorder with anxious and depressed mood, generalized anxiety disorder, attention deficit disorder, and fibromyalgia syndrome. (Doc. 10-2, pgs. 20-23). The ALJ also provided that the medical evidence failed to demonstrate that the numerous other diagnoses that Plaintiff alleged were "more than slight abnormalities, which would have more than minimal effects on an individual's ability to perform basic work activities." (Doc. 10-2, pg. 21). Still, in formulating Plaintiff's RFC, the ALJ considered all of Plaintiff's

6

medically determinable impairments, "including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (Doc. 10-2, pg. 22).

At step 3, the ALJ found Plaintiff's impairments, even when considered in combination, did not meet or medically equal the severity of the impairments listed in the regulations. (Doc. 10-2, pg. 24). The ALJ's decision provided that the evidentiary record did not establish that Plaintiff's degenerative disc disease, stenosis, radiculopathy, hand and wrist osteoarthritis, osteopenia, or right wrist ganglion cyst met the severity levels provided for such conditions in the regulations. (Doc. 10-2, pg. 24). In consideration of Plaintiff's fibromyalgia, an impairment that is not listed in the regulations, the ALJ again considered the effects of that impairment on its own and in combination with Plaintiff's other impairments and found that "the evidence of record fails to show that the [Plaintiff's] fibromyalgia-related symptoms increase the severity of her other medically determinable severe impairments to an extent that the combination of impairments meets the requirements of a listing." (Doc. 10-2, pg. 24). Regarding Plaintiff's mental impairments, the ALJ further determined that Plaintiff had mild limitations in understanding, remembering or applying information, interacting with others, and adapting or managing oneself. (Doc. 10-2, pgs. 25-26). Plaintiff was determined to have a moderate limitation in concentrating, persisting or maintaining pace. (Doc. 10-2, pgs. 25-26). As such, the "paragraph B" criteria for the listings were not satisfied because the impairments did not "result in one extreme limitation or two marked limitations in a broad area of functioning." (Doc. 10-2, pgs. 25-26).

Before proceeding to step 4, the ALJ found Plaintiff had the following RFC:

7

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she can lift and/or carry (including upward pulling) 20 pounds occasionally and 10 pounds frequently. She can push and/or pull 20 pounds occasionally and 10 pounds frequently with the lower and upper extremities. She can stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday. She can sit (with normal breaks) for a total of six hours in an eight-hour workday. She can occasionally climb, stoop, kneel, crouch, and crawl. She can frequently reach, handle, and perform fine manipulation with the bilateral upper extremities. She can understand, carry out, and remember simple and detailed but not complex instructions. She can use judgment in making work-related decisions about simple, detailed, but non-complex instructions.

(Doc. 10-2, pg. 27).

The ALJ found Plaintiff's medically determinable impairments could reasonably have been expected to cause the alleged symptoms, but that Plaintiff's statements on the symptoms' intensity, persistence and limiting effects were "so inconsistent with the medical and other evidence in the record that they will not serve as the basis for the residual functional capacity." (Doc. 10-2, pg. 29). The ALJ detailed Plaintiff's testimony at the hearing regarding the intensity, persistence and limiting effects of her symptoms including, but not limited to, that her conditions affect her ability to sit, stand, walk, lift, reach, squat, bend, kneel, and climb stairs, and that she has difficulty pinching or picking up and holding onto objects, bending her neck, and writing and typing. (Doc. 10-2, pg. 28). Plaintiff also testified that she can only lift about half of a pound, that she can only lift clothes hangers using her thumb and pinky fingers, and that she can only stand for two minutes and walk about ten feet before needing to rest. (Doc. 10-2, pg. 28). She also stated that her mental impairments affect her memory, her ability to understand

instructions, concentrate, and complete tasks, and that she struggles to go places on her own due to her daily struggles with depression and anxiety. (Doc. 10-2, pg. 28). The ALJ stated that Plaintiff's testimony "bore very little resemblance to the record" before conducting a detailed evaluation of Plaintiff's testimony compared to her previous statements and medical records. (Doc. 10-2, pgs. 29-35). The ALJ then considered the medical opinions without deference to those opinions or giving them any specific evidentiary weight. (Doc. 10-2, pgs. 35–38). Based on this evidence, the ALJ concluded that Plaintiff could perform the above RFC. (Doc. 10-2, pg. 38).

At step 4, the ALJ found Plaintiff was unable to perform any past relevant work. (Doc. 10-2, pg. 39). The ALJ noted that the vocational expert testified Plaintiff had past relevant work as a preschool teacher and quality control technician that was performed up to the heavy level, and that such work would exceed Plaintiff's RFC. (Doc. 10-2, pg. 39).

Finally, at step 5, the ALJ found that, in consideration of her age, education, work experience, and RFC, Plaintiff could perform other jobs existing in significant numbers in the national economy. (Doc. 10-2, pgs. 39–40). In doing so, the ALJ noted that Plaintiff, who was 43 years old on the alleged disability onset date, was considered a younger individual and has at least a high school education. (Doc. 10-2, pg. 39). The ALJ's finding for this step was also based on testimony from the vocational expert stating that Plaintiff could perform the requirements of occupations such as Laboratory Sample Carrier, Router, and Collator Operator. (Doc. 10-2, pg. 40). As such, the ALJ determined that

9

Plaintiff was "not disabled" from March 22, 2020, through the date of the decision. (Doc. 10-2, pg. 40). As a result, Defendant denied Plaintiff's application for DIBS and SSI.

## Analysis[1]

The Court's review of the ALJ's decision is "extremely limited" and "very deferential." *See* 42 U.S.C. § 405(g); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Findings of fact, supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g); *accord Clifford*, 227 F.3d at 869. The Court will reverse the ALJ's decision only if the findings of fact were not supported by substantial evidence or the ALJ applied the wrong legal standard. *See Clifford*, 227 F.3d at 869; *accord Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). In this context, "substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Clifford*, 227 F.3d at 869 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Jarnutowski*, 48 F.4th at 773. If reasonable minds could differ about whether a claimant is disabled and the ALJ's decision is supported by substantial evidence, then the Court will affirm the denial of claims. *Jarnutowski*, 48 F.4th at 773 (quoting *Elder*, 529 F.3d at 413). When assessing the evidence, the Court reviews the entire record, but does not reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the ALJ. *See Clifford*, 227 F.3d at 869; *accord Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ is not required to address every piece of evidence or testimony presented, but he must build a 'logical bridge'

---

[1] The portions of the evidentiary record relevant to Plaintiff's arguments and the Court's resolution of the case are incorporated into the analysis below.

between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *see also Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("The ALJ's summary does not mention every detail. But it need not."). An ALJ is not permitted to "cherry pick evidence from the record" to support a conclusion without engaging with evidence weighing against it. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). The Court will not decline to engage in a critical review to act as a rubber stamp. *See Clifford*, 227 F.3d at 869.

Plaintiff presents two arguments in her challenge to the ALJ's decision denying her application. First, Plaintiff argues that the ALJ "played medical doctor" in substituting his own judgment for Plaintiff's treating provider when determining Plaintiff's RFC. (Doc. 16, pgs. 4, 6). Specifically, Plaintiff states that her RFC as determined by the ALJ is unsupported by the record where it states that Plaintiff (1) is capable of light work, and (2) "can use her hands more than one-third of the time, i.e. occasionally, but 'probably not all the time,' i.e. constantly." (Doc. 16, pgs. 3, 5). Second, Plaintiff argues that the ALJ failed in analyzing the limitations on Plaintiff's "ability to manage or adapt" caused by her mental impairments. (Doc. 16, pgs. 6-7).

To start, Plaintiff argues that the evidence in the record does not support a finding that she is capable of light work; namely, that she can lift up to 20 pounds and 10 pounds frequently, as required by 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Doc. 16, pg. 3). Plaintiff asserts that the ALJ's decision failed to recognize that the disability determinations performed at the initial and reconsideration levels of her application "both failed to account for the full scope of issues." In particular, Plaintiff contends that the initial level disability determination performed by Renga Reddy, M.D., "failed to note

11

the reduced strength and range of motion in Plaintiff's left shoulder, noted the use of a brace on Plaintiff's left wrist without further analysis and found tenderness in the left hand." Plaintiff further avers that, while the reconsideration level disability determination performed by Kathleen Treanor, M.D., "noted the diminished strength and range of motion in [Plaintiff's] left shoulder," Dr. Treanor "made no mention of any real examination of Plaintiff's hands." Plaintiff then claims that the ALJ "cited but largely dismissed" the evaluation of one of Plaintiff's treating nurses, Noemi L. Shilts, APRN, arguing that the decision offered no evidence in rebuttal of Ms. Shilts opinion that recommended lifting of no more than 10-15 pounds, "other than to state that the earlier-mentioned evaluations by [Dr.] Reddy and [Dr.] Treanor seemed more supported." (Doc. 16, pgs. 3-4). Plaintiff's position is not tenable. Her argument not only mischaracterizes the ALJ's treatment of these three medical opinions but also ignores all other evidence considered and discussed in the decision.

The ALJ's decision did not "largely dismiss" Ms. Shilts opinion. In fact, the decision found that her opinion was "not entirely at odds" with those of Dr. Reddy and Dr. Treanor and was partially persuasive. Also, the ALJ relied on more than just the state-agency medical opinions in reaching its conclusions. The ALJ clearly stated that a lifting limit of "20 pounds seems more supportable than 15 pounds" was supported by Plaintiff's "recovery after the hand surgeries and the generally full strength in her arms" in addition to the opinions of Dr. Reddy and Dr. Treanor. (Doc. 10-2, pg. 38). That recovery and strength assessment was discussed at length in the ALJ's analysis of Plaintiff's medical records pertaining to her upper extremities. (Doc. 10-2, pgs. 29-31, 34).

12

That Plaintiff would have this Court grant greater weight to the "more thorough exam" (Doc. 16, pg. 3) of her treating nurse is contrary to the standard of review that is to be applied here. As provided above, the Court reviews the entire record, but does not "reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the ALJ." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024); *see also Clifford*, 227 F.3d at 869. As such, the Court finds that the ALJ's determination that Plaintiff is capable of light work is supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed on this point.

Plaintiff again challenges the ALJ's determination of her RFC by claiming that the manipulative limitations provided were not sufficient considering the evidentiary record. Plaintiff argues that the ALJ failed to address conflicting evidence. Specifically, she alleges that the ALJ did not "account for the combined limitations in the [P]laintiff's hands from her extensive issues with her right thumb, arthritis in the left hand and complaints regarding cervical radiculopathy." (Doc. 16, pgs. 5-6). That is simply not the case.

The ALJ's decision could not have made it clearer that Plaintiff's hand-related issues were considered in combination when it determined the appropriate manipulative restriction in Plaintiff's RFC. Shortly after detailing the relevant medical evidence concerning Plaintiff's thumb, hand and cervical spine issues, the ALJ's decision provided as follows:

> [Plaintiff] reported pain that starts at the base of her head and can travel down her left arm and into her wrist. On examination, the claimant had abnormal medical signs

13

> indicative of decreased sensation in both hands and all fingers[.] […] *Coupled with the abnormal medical imaging and signs stemming from the thumb problem*, this evidence justified the need for some manipulative restrictions. She can use her hands for gross movements like holding a steering wheel and baking and given that she can use her hands for fine manipulation when using electronic devices or smoking, the evidence shows she can use her hands and fingers more than alleged at the hearing. This is not an independent medical judgment by a layperson, but rather applying the regulations as written. There is objective medical evidence showing she [has] problems with her hands. Thus, a need for manipulative restriction is a matter of common sense that does not require specialized medical knowledge. Her statements to her medical sources about daily activities and her response to treatment, both of which are discussed above, suggest she can likely use her hands and fingers more than one-third of the time (i.e. "occasionally") but probably not all the time (i.e. "constantly"), so this decision finds she can frequently reach, handle, and perform fine manipulation.

(Doc. 10-2, pg. 31) (emphasis added). In addition to showing that Plaintiff's impairments were considered in combination, this excerpt shows how the ALJ's decision to include manipulative restrictions in Plaintiff's RFC was "common sense," and not a case of an ALJ "playing medical doctor in assuming [P]laintiff could frequently use her hands," as Plaintiff erroneously concludes. (Doc. 16, p. 6). Later in the decision, the ALJ again provides further evidentiary justification for the manipulative restrictions in Plaintiff's RFC when discussing the previous disability determinations. The decision provides that "additional limitations on manipulation and reaching are necessary in light of her functional difficulty with both hands, which is supported by medical imaging of her spine," and that Plaintiff "had some reduced sensation in her hands and a joint problem in one hand, so additional manipulative restrictions were justified." (Doc. 10-2, pg. 36). This demonstrates that the ALJ adequately addressed the evidence of combined

14

limitations of Plaintiff's hands due to her extensive issues with her right thumb, arthritis in the left hand and complaints regarding cervical radiculopathy. Accordingly, the ALJ's decision was adequately supported on this issue as well.

Finally, Plaintiff argues that the ALJ's analysis of her mental disorders was insufficient. (Doc. 16, pgs. 6-8). Plaintiff states that the ALJ failed "in the analysis of Plaintiff's ability to manage or adapt." (Doc. 16, pgs. 6-7). She claims that the report of her psychology consultant Marilyn Marks-Frey, Ph.D., provides the evidence of Plaintiff's "extreme limitation" in her ability to adapt or manage herself. (Doc. 16, pg. 7). Plaintiff contends that the ALJ's decision ignores her inability to control her emotions and the uncontrolled and random emotional outbursts demonstrated and detailed in Dr. Marks-Frey's report, and that no evidence is presented to refute her lack of emotional control. But this argument is insufficient for this Court to justify remand.

As explained *supra*, the ALJ's analysis of Plaintiff's mental impairments determined that her impairments cause her no more than a moderate limitation, and therefore the "paragraph B" criteria are not satisfied. (Doc. 10-2, pgs. 25-26). Regarding her ability to adapt and manage herself, the ALJ determined that Plaintiff experiences a mild limitation. (Doc. 10-2, pg. 26). In support of this finding, the ALJ considered Plaintiff's statements that she finds it challenging to handle stress and changes in routine and that she sometimes bites her fingernails and has unusual fears about her inabilities as a result. The ALJ also noted that Plaintiff stated her attention deficit disorder contributes to her difficulty, but that she finds her medication very helpful. Plaintiff also stated in her consultative psychological evaluation with Dr. Marks-Frey that she is not

15

seeing a psychiatrist or therapist and has never undergone a psychiatric evaluation. This evidence from Plaintiff's consultative psychological evaluation and records from her treating physicians, along with her demonstrated management of her day-to-day activities, led the ALJ to conclude that Plaintiff only had a mild limitation in her ability to adapt or manage herself. (Doc. 10-2, pg. 26).[2]

Further, while Plaintiff states that Dr. Marks-Frey's evaluation and resulting opinion provides the evidentiary support for her alleged "extreme limitation," the ALJ's decision takes care to explain the reasons why it considered that opinion unpersuasive. First, Dr. Marks-Frey report included many abnormal psychiatric signs, which stood in "sharp contrast" to the remainder of the record. (Doc. 10-2, pg. 37). Second, despite the report's opinion that Plaintiff's "adaptive functioning was somewhat limited" and she had "severe anxiety and depressed mood that may impact her ability to work," the ALJ found that there was virtually no evidence of Plaintiff's reduced adaptive abilities or "severe anxiety or a depressed mood, at least not chronically." (Doc. 10-2, pg. 38).

Plaintiff also makes a cursory argument that the ALJ failed to address the evidence showing that she meets or at least equals 12.04, 12.06, 12.11 and 12.08, and that the ALJ "did not evaluate all the paragraph B criteria shared across" those listings. (Doc. 16, pg. 8; Doc. 23, pg. 7). While Plaintiff's argument is underdeveloped, it does not take much to find its fatal flaws. To start, Plaintiff seemingly argues that Dr. Marks-Frey's evaluation

---

[2] While Plaintiff's challenge of the ALJ's decision focuses on whether she met or equals the listings for mental impairments at step 3 of the analysis, the ALJ also analyzed the evidence of Plaintiff's mental impairments in determining her RFC as well, concluding that they "cause no greater than moderate functional limitation, and supports work that involves simple and detailed but not complex instructions." (Doc. 10-2, pgs. 34-35).

serves as the entirety of the evidence supporting her contention that she met or equals each listing. However, the ALJ, as just detailed, found that opinion unpersuasive. Further, not only did Plaintiff fail to specify the evidence demonstrating that such listings were met, she also fails to state which paragraph A criteria is applicable to her for each listing. And Plaintiff's complaint that the ALJ failed to evaluate all the paragraph B criteria shared across the listings rings hollow because she refuses to inform the Court of which area of her mental functioning is limited such that she believes she meets the paragraph B criteria. The only area of mental functioning Plaintiff mentions is her ability to adapt and manage herself, but as the Court just explained, the ALJ's determination that Plaintiff's limitation in that area is mild was reasonable. Even if Plaintiff had identified and claimed that another area of mental functioning listed in paragraph B criteria applied to her, her argument would still fall well short of success. As the Court summarized in the preceding section of this order, the ALJ provided a detailed and reasonable determination for each of the other areas of mental functioning included in paragraph B of listings 12.04, 12.06 and 12.11, finding that Plaintiff's limitations in any such area did not exceed a moderate level.

      Plaintiff also takes specific issue with the ALJ's failure to evaluate her mental impairments under Listing 12.08. She argues that Dr. Marks-Frey's consultative psychological evaluation demonstrated that she suffered from excessive emotionality and attention seeking, and feelings of inadequacy, which would satisfy subparts 5 and 6 of paragraph A of the listing. But even assuming, *arguendo*, that the ALJ found such evidence persuasive and those subparts were met, Plaintiff cannot meet the other

17

requisites of Listing 12.08 under paragraph B. As just detailed above, Plaintiff cannot demonstrate that she would meet the criteria under paragraph B because the ALJ reasonably concluded that Plaintiff's mental impairments do not cause at least two marked limitations or one extreme limitation. Plaintiff's limitations were deemed no worse than moderate. As such, analysis by the ALJ under this listing would have been superfluous.

As shown, the ALJ completed a satisfactory analysis of Plaintiff's mental impairments that provided the necessary "logical bridge" between the evidence and the conclusions. While Plaintiff wishes that the ALJ's decision would have given Plaintiff's consultative psychiatric evaluation more weight than it did, that is not a determination within this Court's purview. Accordingly, the Court cannot say that the ALJ erred in its analysis of listings for Plaintiff's mental impairments.

## Conclusion

For these reasons, the Court **AFFIRMS** the final agency decision of Defendant. The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiff.

**SO ORDERED.**

Dated: September 30, 2025          /s *David W. Dugan*
                                                   _____
                                                   DAVID W. DUGAN
                                                   United States District Judge